UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV 3 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

)
)
XIANGYUAN ZHU                              )
1118 SW Western Avenue, APT 4    )    COMPLAINT
Topeka, Kansas 66604,                    )
Tel. (913) 548-0137                         )
                              *Plaintiff*,    )    Civ. No. _____
        vs.                                   )
                                                   )
WILLIAM H. JOHNS                      )    PLAINTIFF DEMANDS A
517 Danbury Lane                        )    TRIAL BY JURY
Topeka, Kansas 66606                    )
*Defendant.*

CASE NUMBER  1:06CV02062

JUDGE: Unassigned

DECK TYPE: Pro se General Civil

DATE STAMP: 11/30/2006

**JURY ACTION**

---

## COMPLAINT

Plaintiff hereby files her Complaint against the Defendant, and alleges as follows:

BACKGROUND
(Congressional Findings and Declaration of Purposes)

1.    Section 2 of Pub.L. 97-291 provided that:

    **(a)** The Congress finds and declares that:

    **(1)**    Without the cooperation of victims and witnesses, the criminal justice system would cease to function; . . .

    **(2)**    All too often the victim of a serious crime is forced to suffer physical, psychological, or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system unresponsive to the real needs of such victim . . .

    **(5)** While the defendant is provided with counsel who can explain both the criminal justice process and the rights of the defendant, the victim or witness has no counterpart . . .

    The victim may lose valuable property to a criminal only to lose it again for long periods of time . . . many times that property is

**RECEIVED**

NOV 0 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

damaged or lost, which is particularly stressful for the elderly or
poor.

**(b)** The Congress declares that the purposes of this Act are--

**(1)** to enhance and protect the necessary role of crime victims and
witnesses in the criminal justice process;

**(2)** to ensure that the Federal Government does all that is possible
within limits of available resources to assist victims and witnesses
of crime without infringing on the constitutional rights of the
defendant; and

**(3)** to provide a model for legislation for State and local governments.

18 U.S.C. § 1512.

## PARTIES

2.      Plaintiff, Xiangyuan Zhu ("Zhu"), a racially minority Chinese-American citizen,

is a witness, victim, or informant under 18 U.S.C. § 1512. *Infra*. Plaintiff Zhu is a first

time homebuyer and homeowner, and a member of protected groups under, *inter alia*,

Title II of Civil Rights Act of 1964 and Fair Housing Act. She is also the Sr. Risk

Analyst of the Risk Management Department, and a Member of Interest Rate Risk

Management Committee ("IRRMC") of Federal Home Loan Bank of Topeka ("Bank").

3.      Defendant, William H. Johns ("Johns"), D.O., an individual, who is a citizen of

the State of Kansas, may be served with process at 517 Danbury Lane, Topeka, Kansas

66606.

4.      Defendant, William H. Johns ("Johns"), D.O., who has his office then at 2709 SW

29th Street, Topeka, Kansas 66614-2000 then[1], may also be served with process at Kanza

---

[1].      Johns' office now located at and now Kanza Mental Health and Guidance
Center, 909 South 2nd Street, Hiawatha, Kansas 66434.

Mental Health and Guidance Center, 909 South 2nd Street, Hiawatha, Kansas 66434.

## JURISDICTION

5.    The Court has jurisdiction over the lawsuit because the action arises under 18

U.S.C. § 1964 (a) and (c), because there is no requirement that a private action can

proceed only against a defendant who has already been convicted of a predicate act or of

a RICO violation. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985); 28 U.S.C.

§§ 1331 (federal question); 1337 (commerce); 2201, 2202, as well as under the United

States Constitution.

### Under 18 U.S.C. § 1512 (h) this Court has personal jurisdiction over the Defendant

6.    18 U.S.C. § 1512 (h) provides "There is extraterritorial Federal jurisdiction over

an offense under this section."  Therefore, this Court has *in personam* jurisdiction over

the Defendant.

### VENUE IS PROPER

7.    Plaintiff Zhu's claim is substantial and is based on federal law, namely,

Tampering with a witness, victim, or an informant. 18 U.S.C. § 1512 (h) provides "There

is extraterritorial Federal jurisdiction over an offense under this section."  Therefore, the

venue is proper under Rule 12(b)(3).

8.    Venue is determined at the time the action is commenced. 28 U.S.C. § 1391;

Hoffman v. Blaski, 363 U.S. 335, 344 (1960) ("We agree with the Seventh Circuit that:

'If when a suit is commenced, plaintiff has a right to sue in that district, independently of

the wishes of defendant, it is a district 'where (the action) might have been brought.'")

3

Therefore, under 18 U.S.C. § 1512 (h), 28 U.S.C. § 1391, and <u>Hoffman v. Blaski</u>, venue is proper under Rule 12(b)(3).

CONDITIONS PRECEDENT

9.      All conditions precedent have been performed or have occurred.

FACTS

10.     In January 1989, Zhu enrolled at University of Kansas as full time graduate student, and received her M.A. degree in year 1991. In 1992, Zhu enrolled at University of Oklahoma as full time graduate student, and received her Ph.D. degree in year 1997.

11.     On December 15, 1997, Zhu started her employment as a financial analyst at Federal Home Loan Bank of Topeka ("Bank"). Zhu passed her probationary status in May 1998.[2] She had never received corrective or disciplinary memoranda or reports. Within the first six months, the Bank promoted her as Sr. Risk Analyst.

12.     Plaintiff Zhu is a witness, victim, or informant under 18 U.S.C. § 1512. *Infra*. Zhu is the employee of Sr. Risk Analyst of the Risk Management Department, and a Member of Interest Rate Risk Management Committee ("IRRMC") of Federal Home Loan Bank of Topeka ("Bank"). She is also a first time homebuyer and homeowner, and a member of protected groups under 42 U.S.C. § 1981, Civil Rights Act of 1991, and Title VII of Civil Rights Act 1964. From June 2001 to July 2002, Zhu was a patient of D.O. Johns.

**The Section 901 of Title VIII of the Civil Rights Act of 1968**

13.     On July 2, 1999, under advice of the attorney of the Employment Assistant Program of the Bank, Ms. Zhu reported a rape in her then residential home located at

---

[2]  In June 1998, Zhu was a single mother raising her minor child alone because she was divorced in 1995.

2918 SW Gainsboro Road, Topeka, Kansas 66614, to Shawnee County Sheriff's Department having case number 99-06428. Born and grew up in China, where English is second language, Zhu then did not know the word of "rape." It was the attorney who spelled out the word "R-A-P-E" to her over telephone and advised her to say this word to the police.

14.     Zhu also called 800-telephone number of U.S. Department of Housing and Urban Development ("HUD") and reported to HUD what the realtor Marc Bunting did to her in her residential home.

15.     On September 1, 1999, Zhu traveled to Kansas City for a business meeting related to her then online free service for homebuyers and home sellers in the United States. Zhu's car was hit from behind in a rear-end collision caused by Deanna L. McCune's ("McCune") vehicle that occurred at approximately 12:00 p.m. on September 1, 1999, at intersection of Wornall Road and 73rd Street, Jackson County, Missouri. As a result of the impact, Zhu suffered the sudden onset of pains of head pain, traumas, neck and low back pain, and its worsening and continuation to time of this complaint.

16.     In early May, 2000, Zhu received a letter dated April 28, 2000 from U.S. Department of Housing and Urban Development ("HUD") that her "complaint, alleging one or more discriminatory housing practices, was officially filed on 04/28/00 as a complaint under the Federal Fair Housing ("FHA") Law, 42 U.S.C. Sections 3601-3619 having HUD Case No. 07-00-0302-8. It is the staff of HUD who wrote the complaint for Zhu, and the discriminatory acts under Section 901 of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988 is a federal offense. Therefore, Zhu is the witness, victim, or informant under 18 U.S.C. § 1512.

17.    On May 12, 2000, just two weeks after Zhu filed the HUD complaint, one of the respondents in *Zhu v. Countrywide Realty et al.* HUD case No. 07-00-0302-8 Marc Bunting ("Bunting"), and Bunting Appraisal Services sent certified letter to Zhu at her dwelling house, 2918 SW Gainsboro Road, Topeka, Kansas 66614, and "it threatened criminal proceedings- arguably unjustified-if Plaintiff [Zhu] did not leave Bunting alone. The threat of legal action can be a 'powerful instrument of coercion.'" Memorandum and Order p. 25, Case No. 00-2290-KHV (Aug. 10, 2001).

18.    "the fact Bunting filed his petition for a restraining order roughly three weeks after Plaintiff [Zhu] filed her HUD complaint raises an inference of causation. *See*, Ward v. Wal-Mart Stores, Inc. 140 F.Supp.2d 1220, 1230-31 (D.N.M.2001)(temporal proximity between employee filed EEOC claim and employer's appeal of unemployment compensation award raised inference of retaliatory motive)." Memorandum and Order Case No. 00-2290-KHV (Aug. 10, 2001).

19.    "the timing of the letter and the lawsuit raises an inference of retaliation; and (4) Bunting's letter and suit constitute adverse actions that could deter Plaintiff [Zhu] from exercising her rights under the Fair Housing Act." Memorandum and Order Case No. 00-2290-KHV (Aug. 10, 2001).

20.    Zhu filed compulsory lawsuits in the same Third Judicial Court of Kansas, having case numbers 00-C-665 and 00-C-714 respectively, and they were consolidated into Case No. 00-C-579.

21.    On April 2, 2001, the white male realtor Bunting's Journal Entry was signed and filed in the Third Judicial Court of Kansas, as pertinent here, that

"Marc E. Bunting's Petition for (Permanent) Restraining Order is sustained.

That the Defendant [Zhu] should be restrained from being on the premises of the Plaintiff's residence [it is undisputed fact by Bunting that Zhu has never been on the premises of his residence.]

That the Defendant [Zhu] should be restrained from being on the premises of the Plaintiff's business which is Bunting Appraisal Service, 2030 S.W. McAlister, Topeka, Kansas 66604 [According Shawnee County of Kansas' record, this address was recorded as a building lot under Bunting's name].

That the Defendant [Zhu] should be restrained from being within 500 feet of the Plaintiff wherever he may be found, except as any litigation or alternative dispute resolution proceedings require their joint attendance ..."

22.       The mediator Magistrate Judge James P. O'Hara noted in his <u>Report and Recommendation</u> of November 18, 2001 in Case No. 00-2290-KHV, "Mr. Bunting proved none of his allegations (in the Third Judicial Court of Kansas) against Ms. Zhu was true."

### Price Discrimination & New Product

23.       On June 27, 2001, the Bank published *Basis Points* that it was going to invite its employees to the July meetings of "Fishing for Good Ideas," which would be facilitated by Brad Hodges, Vice President of Corporate Service, and Andy Jetter, Executive Vice President and COO.  The Bank also stated in that publication, "We hope everyone will find the time to attend and offer their input on the Bank's future."

24.       On July 24, 2001, Zhu attended the "Fishing for Good Ideas" meeting.  On that day, Zhu, as representative of her discussion group, communicating to the Bank at the "Fishing for Good Ideas" meeting that she believed in good faith that it was improper for the Bank (1) to add large margin to its small member financial institutions under

antitrust law (price discrimination); and (2) to sell the "New Product" to its member

financial institutions (the bank fraud).

25.    On July 26, 2001 approximately about 9:00 a.m., only one day after the

Bank's "Fishing for Good Ideas" meeting, without any advanced notice or warning, Mrs.

Cox called Zhu to see her at Human Resources. There, she escorted Zhu into HR

conference room. When Zhu walked into that room, she saw Mr. Tiernan, Mr.

McLelland, and Mr. Ma were sitting there already, Mr. Tiernan disruptively discharged

Zhu on the spot, when Zhu was going to attend the Pre-Trail Conference of case No. 00-

2290-KHV.[3]

26.    There, Mrs. Cox, knew the termination of the Zhu's employment had not

followed the Employee Handbook of the Bank at time, then gave Zhu an envelope

alleging that everything she needed to know was in the envelope and asked Zhu leave the

Bank immediately. She denied Zhu's request that she should be allowed to read what's

in the envelope there.

27.    Back home, Zhu found the envelope contained Sherri Workman's letter dated

July 26, 2001 addressed to her, "Effective today, your [Zhu's] employment with the

Federal Home Loan Bank of Topeka has been terminated." Zhu and her minor child were

taken off the Bank's health plan on July 31, 2001.

28.    In December 2002, Xiangyuan Zhu, the former employee of Sr. Risk Analyst

of Federal Home Loan Bank of Topeka ("Bank"), who believes she has been discharged

or discriminated against in violation of subsection (a) of Whistleblower Provision of the

---

[3]    Several days before July 26, 2001, Zhu emailed her supervisors that she was
going to take time off on July 26, 2001 to attend the Pre-Trail Conference of case No. 00-
2290-KHV.

Financial Institution Reform, Recovery, and Enforcement Act ("FIRREA") [12 U.S.C. §

1831j], and commenced an action against, *inter alia*, the Bank, having now Case No.

02:04-CV- 2539-KHV.

29.      It was only after Zhu filed her amended complaint in December 2004 alleging

the Bank defendants' violation of Sarbanes-Oxley Act, the Bank announced on March 31,

2005 that

> "it has restated its financial statements for 2001 . . .
>
> Correction of these errors resulted in a $7.5 million reduction in reported net income for 2001, reducing reported net income from $87.7 million to $80.2 million.
>
> The FHLBank is completing its review of the impact of the corrections of these errors on previously reported results of operations for 2002 and 2003.  Although the review is not final, preliminary analysis indicates . . .
>
> If the FHLBank does not restate those years, the cumulative impact of the corrections applicable to 2002 and 2003 will result in a $2.3 million reduction in the FHLBank's 2004 net income."

30.      Since the involuntary unemployment of August 10, 2001, Zhu and her child

have lived, and are still living in the station of poverty without any health insurance.

31.      Therefore, Zhu is the witness, victim, or informant under 18 U.S.C. § 1512

because Zhu was in the communication to a law enforcement officer (HUD) or judge of

the United States of information relating to the commission or possible commission of a

Federal offense of (1) Section 901 of Title VIII of the Civil Rights Act of 1968; and *inter*

*alia*, (2) violation of Antitrust Law (Price Discrimination), bank fraud, and Sarbanes-

Oxley Act by the Bank.

**The Car Accident of September 1, 1999 in Kansas City, Missouri**

32.     On September 1, 1999, Zhu traveled to Kansas City for a business meeting related to her then online free service for homebuyers and home sellers in the United States.

33.     Zhu's car was hit from behind in a rear-end collision caused by Ms. McCune's vehicle that occurred at approximately 12:00 p.m. on September 1, 1999, at intersection of Wornall Road and 73rd Street, Jackson County, Missouri.  As a result of the impact, Zhu suffered the sudden onset of pains of head pain, traumas, neck and low back pain, and its worsening and continuation to time of this affidavit.

34.     At the time of the car accident described above, Zhu did not have cell phone. Someone unknown to her called 911 and reported the car accident to police.  In no time, police officer Patrick Foster ("Foster") was dispatched to the place of the car accident, and he filed police report having case No. 99-097612.

35.     At the car accident place, the policy officer Foster called an ambulance and Zhu was sent to Baptis Medical Center in Kansas City Missouri by the ambulance.  The medical bills for the ambulance, Baptis Medical Center, Midwest Radiology, Walgreens were $1,973.93 on September 1, 1999 for Zhu.

36.     At approximately 12:00 p.m. on September 1, 1999, D.O. Johns was not at intersection of Wornall Road and 73rd Street, Jackson County, Missouri.

37.     In August 2001, Zhu brought an action for her injuries sustained from the car in the Circuit Court of Jackson County, Missouri having Case No. 01-CV-220414.

38.     On September 1, 1999, Zhu was not patient of D.O. Johns, and Zhu does not make claim of D.O. Johns' bill of $1,127.00 and his prescription of about $9,000.00

incurred to her between June 2001 and July 2002 against McCune's auto insurance policy with State Farm.

### The Family Physician Kennen Thompson's Referrals

39.     In January 1998, Kennen Thompson, M.D. ("Thompson") became Zhu's family physician through his employment with St. Francis Health Center, Inc. ("St. Francis").

40.     In early July 1999, Zhu went to see her than family physician Kennen Thompson ("Thompson"), M.D.  for an appointment arranged by the staff of her then employment assistant program of the Bank because of the rape.

41.     Dr. Thompson referred her to see Jonathan Farrell-Higgins, Ph.D. ("Farrell-Higgins") for the purpose of obtaining treatment for her Post-Traumatic Stress Disorder and sleeping disorder for her symptoms of nightmare of re-experiencing the rape.

42.     In June 2001, Zhu presented to her then family physician Dr. Thompson for the purpose of obtaining treatment for her symptoms that she was suffering, and she had suffered severally from lack of sleeping because of the nightmare of re-experiencing the rape, the permanent restraining order against her by the white male realtor Bunting, and the ongoing intimidation, threatens, and harassment against her at her job place.  Dr. Thompson neither discussed nor disclosed to Zhu that Sr. Francis had sleeping disorder treatment center, and he referred Zhu to see D.O. Johns for medication treatment of her sleeping disorder.

11

**D.O. Johns**

43.       The incidents described here was part of a continuing series of incidents of

D.O. Johns' conduct, transaction, or occurrence set forth or attempted to be set forth in

the original complaint.

44.       On June 7, 2001, Zhu followed the referral of her then family physician Dr.

Thompson to see D.O. Johns. At that time, Zhu did not know that D.O. Johns did not

have psychiatrist certification because he had not pass the examination required for

psychiatrist certification. If D.O. Johns disclosed to her then that he did not have

psychiatrist certification by an American Medical Specialty Board, Zhu would not see

him at all.

45.       On June 7, 2001, D.O. Johns did not discuss with Zhu his diagnose. However,

he wrote in Zhu's medical record "IV. Treatment of current problems: Psychotherapy:

Dr. Farrell-Higgins . . . XI. Diagnostic Impressions: "[A]xis 1: Adjustment disorder w

depression/Anxiety poss. MDD . . . XIII Treatment Plan: D. I reviewed and gave the

patient printed information regarding potential benefits and adverse reactions to

trazodone. The patient is competent, understands, and agrees to these recommendations

. . . return appointment: medication 6-28-1." Zhu knows this and all the following

related writings in her medical record from D.O. Johns' medical file.

46.       On June 7, 2001, D.O. Johns did not "use the DSM-IV-R, the Diagnostic and

Statistical Manual of Mental Disorders . . . the official manual of mental disorders. It

describes the various diagnoses and sets forth the criteria used to justify the diagnosis."

Linda D. Elrod, Distinguished Professor of Law, Washburn University School of Law,

12

Topeka, Kansas, & Honorable James P. Buchele, Judge, 3rd Judicial District, Topeka, Kansas, *Kansas Law and Practice*, *Kansas Family Law*, vol. 2, § 12.4, 213 (West 1999).

47.     On June 7, 2001, Zhu did not expect that D.O. Johns would call the white male realtor Bunting's attorney Mr. Lemon after her visit with D.O. Johns, and Zhu has never given her permission to D.O. Johns that he talk about her visit with D.O. Johns to Mr. Lemon.

48.     On June 27, 2001, Zhu followed the pre-scheduled appointment to see D.O. Johns. He intimidated her by yelling at her loudly that he had called and talked to the white male realtor Bunting's Attorney Mr. Lemon, and Mr. Lemon said she was a person very difficult to deal with. He may not want to treat her at all. However, D.O. Johns prescribed to Zhu more medication at the end of that visit.

49.     During Zhu's visits of 6-27-2001, 7-18-2001, 8-29-2001, 9-26-2001, 10-24-2001, 11-21-2001, 12-19, 2001, 1-17-2002, 2-14-2002, 6-10-2002, 7-1-2002, and 7-29-2002, D. O. Johns wrote in her medical file "IV. Treatment plan . . . C. Therapy: Dr. Farrell-Higgins."

50.     During Zhu's visits of 6-27-2001, 7-18-2001, and 8-29-2001 D.O. Johns did not gave her any information regarding potential benefits and adverse reactions to his prescriptions at all.

51.     The strong dosage of medication prescribed by D.O. Johns made Zhu very sleepy in the morning, while she was working as the Sr. Risk Analyst at the Bank. She could not timely report to work at 7:30 a.m. On July 26, 2001, she was terminated from her employment and taken off the Bank's health plan mainly for failing to accede to a seven thirty -to-four thirty schedule.

13

52.        During Zhu's visit of 9-26-2001, D.O. Johns wrote in her medical file, "[I] reviewed and gave the patient printed information regarding potential benefits and adverse reactions to Lorazepan.  The patient is competent, understands, and agrees to these recommendations."

53.        During Zhu's visit of 10-24-2001, D.O. Johns wrote in her medical file, "[I] reviewed and gave the patient printed information regarding potential benefits and adverse reactions to Amfricu [sic].  The patient is competent, understands, and agrees to these recommendations."

54.        On October 24, 2001, at Zhu's request, D.O. Johns filed Attending Physician's Initial Statement of Disability for her occupational insurance company Fortis.  Under item Psychiatric Impairment he checked "[C]lass 1- patient is able to function under stress and engage in interpersonal relations (no limitations). Class 2- Patient is able to function in most stress situations and engages in only limited interpersonal relations (slight limitations)."

55.        On October 24, 2001, Jonathan Farrell-Higgins, Ph.D. filed Attending Physician's Initial Statement of Disability for Zhu's occupational insurance company Fortis.  Under item Psychiatric Impairment he checked "[C]lass 1- patient is able to function under stress and engage in interpersonal relations (no limitations)."

56.        On June 10, 2002, Zhu provided D.O. Johns in the form of "sealed information" a copy of doctor Hough's report, which she received from her occupational insurance company Fortis, and requested that the report be returned to her when D.O. Johns finished his review.  Without obtaining Zhu's consent, D.O. Johns made a copy of doctor Hough's report and placed it in her medical file with him.

14

57.        During Zhu's visits of 11-21-2001, 12-19-2001, and 1-17-2002 D.O. Johns
did not gave her any information regarding potential benefits and adverse reactions to
his prescriptions at all.

58.        During Zhu's visit of 2-14-2002, D.O. Johns wrote in her medical file, "[I]
reviewed and gave the patient printed information regarding potential benefits and
adverse reactions to clmazepam [sic], frazodone. The patient is competent, understands,
and agrees to these recommendations."

59.        During Zhu's visits of 3-14-2002, 6-10-2002, 7-1-2002, and 7-29-2002 D.O.
Johns did not gave her any information regarding potential benefits and adverse
reactions to his prescriptions at all.

60.        During Zhu's visit of July 1st, 2002, Dr. Johns told her "I know you are not
psychosis, and psychosis does not apply to you. However, there is a new drug named
resperdal, I want you try it."

61.        On July 10, 2002, Zhu took D.O. Johns' prescriptions to the pharmaceutical
store to fill it out. Zhu was shocked when the pharmacist told her that D.O. Johns'
prescription of resperdal meant that she was a psychosis. Zhu told the pharmacist it
must be some mistake because D.O. Johns told her before she went to the pharmaceutics
store that she was not psychosis. Zhu then requested that the pharmacist not file D.O.
Johns' prescription of resperdal. It appeared that pharmacist would not listen to Zhu's
request and filed out D.O. Johns' prescription of resperdal.

62.        The different statements regarding the prescription of resperdal by the
pharmacist and D.O. Johns made Zhu realized that D.O. Johns did not tell her the truth
regarding his prescription of resperdal. However, Zhu feared retaliation by D.O. Johns

and did not want to be subjected to the trauma of confronting D.O. Johns. Therefore, Zhu canceled all her future appointments with Dr. Johns in August 2002.

63.     From 6-7-2001 through 7-29-2002, D.O. Johns billed Zhu for his services. Specifically, on June 7, 2001, he charged Zhu $178.00 for his 55 minutes session of alleged "psychiatric evaluation," and he charged Zhu $73.00 for all her visits for alleged "medication management." Zhu know from Patient Financial History by DT Service.

### D.O. Johns' Depositions for the Car accident of 9-1-1999

64.     Since August 2002, Zhu has not been a patient of D.O. Johns.

65.     On April 8, and 9, 2003, Zhu received Notice to Take Deposition Duces Tecum from Ms. McCune, who has criminal record, "[n]otified of following deposition(s): . . . April 15 and 16, 2003 . . . Dr. Thompson . . . Dr. Farrel Higgins . . . Dr. Hough . . . Federal Home Loan Bank of Topeka" were going to testify in the depositions; and on April 23, 2003 "Dr. Johns" was going to testify in the depositions. Zhu know the Notices because Ms. McCune's attorney sent them to her via faxes and US mails.

66.     On April 23rd, 2003 and May 19, 2003, there was no subpoena for D.O. Johns, as the witness for Ms. McCune, who has criminal record, and the circuit court of Jackson County, Missouri does not have personal jurisdiction over D.O. Johns, who having voluntarily taken an oath before certified shorthand reporter Jana l. Willard in a deposition conducted by Ms. McCune, entitled the rear-end collision car accident of September 1, 1999, at intersection of Wornall Road and 73rd Street, Jackson County, Missouri with Case No. 01-CV-220414 that he would testify truly.

67.     D.O. Johns testified that Zhu was psychotic. McCune's representative Mrs. Campbell-Tucker then asked him what did he mean by "psychosis." He answered,

"Well, she (Zhu) had such strong beliefs that couldn't be changed by attorneys and judges ... I had asked doctor Ferrell Higgins on several occasions whether he felt that she was psychotic and in general he said he didn't... And I had been concerned about this all along, but I never put anything down. That's why I had talked with doctor Ferrell Higgins on several occasions."

68.    D.O. Johns also made intentional misrepresentation: "When I (D.O. Johns) got a chance to review more of doctor Hough's report ... And he said that he thought that she (I) was at risk for psychosis ... So as a result of that I thought, what the heck, give it a shot and I started her on Riperdal, R-I-S-P-E-R-D-A-L, which is an anti psychotic agent. I started her on it just to see what would happen because sometimes you can get benefits, you know, from things that are not totally apparent."   The Trans. Lines 14-25 at page 25, and lines 1-4 at page 26.

69.    On April 23rd, 2003 and May 19, 2003, D. O. Johns used his prescription of Riperdal in July 2002 as his proof that Zhu is psychotic because "Riperdal, R-I-S-P-E-R-D-A-L, which is an anti psychotic agent."

70.    Zhu knows D.O. Johns' statement from the transcript of his deposition, and she was there as the pro se plaintiff in the car accident case during the deposition. Zhu knows that D.O. Johns was not at intersection of Wornall Road and 73rd Street, Jackson County, Missouri on September 1, 1999.

71.    The truth and facts are the Honorable Kathryn H. Vratil, U.S. District Court Judge found in that Court's Memorandum and Order, *Zhu v. Countrywide Realty et al.* Case No. 00-2290-KHV (Aug. 10, 2001) that "[t]he fact Bunting filed his petition for a restraining

17

order roughly three weeks after" Zhu filed her "HUD complaint raises an inference of causation."

72.     On November 18, 2001, the Honorable James P. O'Hara, U.S. District Court Magistrate Judge noted, "[M]r. Bunting proved none of his allegations against Zhu was true," Report and Recommendation, *Zhu v. Countrywide Realty et al.* Case No. 00-2290-KHV (Nov. 18, 2001).  However, the Shawnee County Court, Kansas ordered in *Bunting v. Zhu*, case No. 00-C-579 that Ms. Zhu must be permanently restrained anywhere 500 feet Mr. Bunting may be found in the places of public accommodation, public place and public buildings.

73.     Zhu did file motion in Shawnee County Court, Kansas asking that court's help regarding the compliance of that court's permanent restraining order against her because Zhu did not, and does not know where Mr. Bunting would be.  If that court provides her information where Mr. Bunting may be found, she would, and will make arrangement to avoid being in the 500 feet.

74.     D.O. Johns stated as the Attending Physician's Initial Statement of Disability for Zhu's occupational insurance company Fortis.  Under item Psychiatric Impairment he checked "[C]lass 1- patient is able to function under stress and engage in interpersonal relations (no limitations). Class 2- Patient is able to function in most stress situations and engages in only limited interpersonal relations (slight limitations)."  Nowhere D.O. Johns wrote in Zhu's medical records that he felt Zhu was psychotic.

75.     Dr. Farrell-Higgins stated as the Attending Physician's Initial Statement of Disability for patient of Zhu's occupational insurance company Forts.  Under item

18

Psychiatric Impairment he checked "[C]lass 1- patient is able to function under stress and engage in interpersonal relations (no limitations)."

76.    Dr. Hough stated clearly in his report that he did not feel Zhu was psychotic. Zhu knows it from reading his report.

77.    On at least two occasions of May 29, 2003 and June 30, 2003, D.O. Johns used and caused to be used mail depositories of the United States Postal Service by both placing and causing to be placed his fraudulent charges against Zhu in the amount of four hundred dollars ($400) for his fraudulent claims that

a.    Zhu contacted him for reschedule appointment on April 22, 2003;

b.    D.O. Johns performed psychiatric evaluation upon Zhu on April 23, 2003 ($200); and

c.    D.O. Johns performed professional services for Zhu on May 19, 2003 ($200).

Zhu knows it because she received the bill statements from US mail delivered to her home from D.O. Johns.

78.    The truth and facts are: (1) Zhu did not contact D.O. Johns at all on April 22, 2003, and Zhu will not choose D.O. Johns as her healthcare provider; (2) About 9:30 a.m. on April 23, 2003, Zhu was in then office of D.O. Johns, 2709 SW 29th Street, Topeka, Kansas as the pro se plaintiff of the car accident for Ms. McCune's taking deposition of D.O. Johns, who was directly examined by Ms. McCune's attorney Campbell-Tucker for less than half hour on that day; and (3) About 12:00 p.m. on May 19, 2003, Zhu was in then office of D.O. Johns, 2709 SW 29th Street, Topeka, Kansas as the pro se plaintiff of the car accident for Ms. McCune's taking deposition of D.O. Johns for about half hour.

79.     On April 15, and 16, 2003, Dr. Thompson, Dr. Farrel-Higgins, and Dr. Hough "

were called as a witness on behalf of Ms. McCune in Topeka, Kansas. None of them

alleged that they performed any psychiatric evaluation on Zhu for the depositions. None

of them alleged that they performed professional services for Zhu for the depositions.

None of them sent any bill to Zhu for the depositions.

80.     On April 23, 2003, Zhu saw McCune's attorney Ms. Campbell-Tucker advised

D.O. Johns that she was the one with the law firm who was the setting party for his

deposition, and she also advised D.O. Johns that he send bills to Ms. Campbell-Tucker

and furnished him her business card.

81.     On April 23, 2003, D.O. Johns was "[c]alled as a witness on behalf of McCune,

pursuant to Notice of Take Deposition . . . direct examination by McCune's attorney

Ms. Campbell-Tucker" for less than half hour.

82.     On May 19, 2003, D.O. Johns was "[c]alled as a witness on behalf of McCune,

pursuant to Notice of Take Deposition . . . cross examination by Zhu, Redirect

examination by McCune's attorney Ms. Campbell-Tucker . . ." for about half hour.

83.     Zhu did not receive any notice nor gave any consent regarding D.O. Johns'

alleged psychiatric evaluation upon her on April 23, 2003, which he sent Zhu bills of

$200 via US mail more than one occasion.

84.     During his deposition of April 23, 2003, D.O. Johns did not "use the DSM-IV-R,

the Diagnostic and Statistical Manual of Mental Disorders . . . the official manual of

mental disorders.  It describes the various diagnoses and sets forth the criteria used to

justify the diagnosis."  Linda D. Elrod, Distinguished Professor of Law, Washburn

University School of Law, Topeka, Kansas, & Honorable James P. Buchele, Judge, 3rd

Judicial District, Topeka, Kansas, *Kansas Law and Practice*, *Kansas Family Law*, vol. 2, § 12.4, 213 (West 1999).

85.    On April 23, 2003, D.O. Johns used his prescription of Riperdal in July 2002 as his proof that Zhu is psychotic because "Riperdal, R-I-S-P-E-R-D-A-L, which is an anti psychotic agent."

86.    D.O. Johns did not give Zhu any notice, nor he had the requisite permission to conduct any psychiatric evaluation upon Zhu person against her will, which he sent Zhu bills of $200 via US mail more than one occasion.

87.    Zhu did not order, nor agreed, nor received any D.O. Johns alleged professional service for Zhu on May 19, 2003, which he sent Zhu bills of $200 via US mail more than one occasion.

88.    On July 30, 2003, Zhu wrote a letter to D.O. Johns, and explain to him that Zhu did not order nor received any service from him on April 23 and May 19, 2003. All he did on those days was acting as witness for McCune, whose attorney advised him to send bills to her.

89.    After April 23, 2003, the Bank alleged that Zhu was, and is "mentally ill," and used it as a weapon against Zhu to influence, or impede official proceedings, or attempts to do so, and to intentionally harasses Zhu and thereby hinders, delays, prevents, or dissuades Zhu from reporting to a law enforcement officer or judge of the United States the commission or possible commission of a federal offense of violation of antitrust law, bank fraud, and Sarbanes-Oxley Act by the defendants in *Zhu v. Federal Home Loan Bank of Topeka,  et al*, as well as interfere with Zhu's livelihood.

90.    From June 7, 2001 to July, 2002, the total medical bills D.O. Johns charged Zhu for her visits and his prescriptions is about $10,000 and this is a factor that BlueCross Blushield of Kansas would not sell Zhu any health insurance.

91.    D.O. Johns continues his assertion that his fraudulent billings against Zhu in the amount of four hundred dollars that (1) he performed psychiatric evaluation upon Zhu on April 23, 2003; and (2) he performed professional services for Zhu on May 19, 2003 is his "[t]ypical practice." D.O. Johns has continued this "typical practice" since 1985.


Count 1 – Federal Health Care Offense [18 U.S.C. §§ 24, 1341], and violations of Victim and Witness Protection Act [18 U.S.C. §§ 1512 -1513]

92.    Plaintiff Zhu incorporates by reference the allegations of paragraphs 1-91, *Supra*, as though fully set forth herein.

93.    This is a civil action brought by plaintiff Zhu under the Organized Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations, 18 U.S.C. § 1961 *et seq*.

94.    The plaintiff is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

95.    Defendant William H. Johns is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and (d).

96.    D.O. Johns was associated with an enterprise, the known and unknown others, which engaged in and the activities of which affected interstate commerce, within the meaning of 18 U.S.C. § 1962(c).

97.    The defendants D.O. Johns was an owner of, was employed by, or was associated with an enterprise, that is, the known and unknown others, engaged in and the activities of which affected interstate commerce, within the meaning of 18 U.S.C. § 1962(c).

98.    The defendant D.O. Johns did conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs, and conspired so to do, through a pattern of racketeering activity defined by 18 U.S.C. § 1961(1)(B), and (E), to-wit:

    **1.**    Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

    2.    Multiple instances of mail fraud as the health care provider in violation of 18 U.S.C. §§ 24, and 1035;

    3.    Multiple instances of knowingly engages in misleading conduct toward plaintiff Zhu, with intent to influence, delay, or prevent the testimony of Zhu in an official proceeding; or hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense of (i) Section 901 of Title VIII of the Civil Rights Act of 1968 by the white male realtor Bunting; (ii) violation of antitrust law (price discrimination) by the Bank; (iii) violation of 18 U.S.C. § 1344 (bank fraud), and (iv) violation of Sarbanes-Oxley Act in violation of 18 U.S.C. § 1512(b);[4]

---

[4]  18 U.S.C. § 1512 provides in pertinent part:

    (e) In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

4.    Multiple instances of intentionally harasses plaintiff Zhu and thereby

hinders, delays, prevents, or dissuades Zhu from attending or testifying in an

official proceeding; reporting to a law enforcement officer or judge of the

United States the commission or possible commission of a Federal offense (i)

Section 901 of Title VIII of the Civil Rights Act of 1968 by the realtor

Bunting; (ii) violation of antitrust law (price discrimination) by the Bank; (iii)

violation of 18 U.S.C. § 1344 (bank fraud),and (iv) violation of Sarbanes-

Oxley Act in violation of 18 U.S.C. § 1512(d); and

5.    The defendant knowingly, with the intent to retaliate, took action harmful

to plaintiff Zhu, including interference with her lawful employment and

livelihood.  The defendant's acts constitute violation of 18 U.S.C. §

1513(e)(retaliation) & (e) (conspiracy).

108.    The plaintiff Zhu was directly and distinctly injured by the defendant D.O. Johns

in her business and property in an as yet undetermined amount by reason of violations of

18 U.S.C. §§ 1962(c) and (d) committed by the aforesaid defendant within the meaning

of 18 U.S.C. § 1964(c).

---

(f) For the purposes of this section--

    (1) an official proceeding need not be pending or about to be instituted at
the time of the offense; and
    (2) the testimony, or the record, document, or other object need not be
admissible in evidence or free of a claim of privilege.

Id.

### PRAYER FOR RELIEF

#### A. Monetary Relief

109.    WHEREFORE, for the reasons stated in Counts 1, *supra*, Plaintiff Xiangyuan Zhu

prays that judgment be entered against Defendants William H. Johns in favor of plaintiff

as follows.

      a.      Actual damages of, *inter alia*, the medical expenses, in an as yet

           undetermined amount, the amount duly trebled in accordance with 18

           U.S.C. § 1964(c).

      b.      For punitive damages, in an amount to be determined at trial, in

           accordance with federal and state laws.

      c.      For the costs of investigation and processing of claims in an

           undetermined amount, trebled in accordance with 18 U.S.C. § 1964(c).

      d.      For the costs of suit in accordance with 18 U.S.C. § 1964(c), and

      e.      For reasonable attorney fees (if she could retain one), in accordance

           with 18 U.S.C. § 1964(c) and state law.

#### B. Equitable Relief

110.    For the reasons stated in Counts 1, *supra*, Plaintiff Zhu prays that a declaratory

judgment be entered against William H.Johns, D.O. that he has violated 18 U.S.C. §§ 24,

and 1035; 18 U.S.C. §§ 1341; 1512(b) & (d); and 1513(e)(retaliation) & (e).

#### C. Other Relief

111.    For such other damages, relief the Court deems just and proper to award plaintiff

Zhu complete relief.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

112.    Plaintiff Zhu incorporates paragraphs 1-91 by reference.

105.    Plaintiff, Xiangyuan Zhu, asserts her rights under the Seventh Amendment to the

U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a

trial by jury on all issues.

Respectfully submitted,

Xiangyuan Zhu, Ph.D.
Plaintiff, *Pro Se*
1118 SW Western Ave., Apt. 4
Topeka, Kansas 66604
TEL: (913) 548-0137